**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 09-cv-01767-CMA-KLM

TRIPOLI MANAGEMENT, LLC,
    d/b/a DWIRE EARTHMOVING & EXCAVATING,

    Plaintiff,

v.

WASTE CONNECTIONS OF KANSAS, INC.,

    Defendant.

---

## ORDER REGARDING DEFENDANT'S MOTION TO DISMISS

---

This is a contract dispute. This matter is before the Court on Defendant's motion to dismiss for lack of personal jurisdiction. *(See* Doc. # 7, citing to Fed. R. Civ. P. 12(b)(2).) The motion is ripe for ruling.

## I. BACKGROUND

### A. INTRODUCTION

Plaintiff is a Colorado-based earthmoving and excavation company. Defendant is a Kansas-based waste removal and recycling company. Plaintiff entered into a contract with Defendant to provide earthwork on Defendant's landfill in Western Kansas.

Plaintiff contends that it performed its end of the deal but Defendant did not, so Plaintiff sued Defendant in Colorado state court. Defendant removed the case to federal court and filed the at-issue motion, arguing the Court lacks personal jurisdiction over it.

As shown below, the question facing the Court is whether Defendant has

sufficient "minimum contacts" in Colorado for the Court to exercise jurisdiction over it

without running afoul of the Due Process Clause.  The following facts are a summary of

those "minimum contacts," as alleged by Plaintiff in its complaint and a supporting

affidavit.  Given the procedural posture, the Court takes as true all well-pled facts[1]

---

[1]The *Dudnikov* court used the word "plausible" in defining "well-pled fact," writing that
"[w]hen, as here, personal jurisdiction is found wanting on the basis of the complaint and
affidavits, our review of the district court's dismissal is de novo, taking as true all well-pled (that
is, plausible, non-conclusory, and non-speculative, *see Bell Atl. Corp. v. Twombly*, 550 U.S.
544, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007)) facts alleged in plaintiffs' complaint."
*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).  The Court
has reservations employing the word "plausible" in its analysis here, for a couple reasons.
    First, as shown above, the *Dudnikov* court cited to the Supreme Court's *Twombly*
decision in reciting the word "plausible."  *Twombly* announced a new standard – later developed
by *Ashcroft v. Iqbal* – by which courts should evaluate the sufficiency of a complaint under Fed.
R. Civ. P. 8(a)(2) and its corollary, Fed. R. Civ. P. 12(b)(6).  *See Ashcroft v. Iqbal*, --- U.S. ----,
129 S.Ct. 1937, 1949-51 (2009).  Rule 8(a)(2) requires that a plaintiff's complaint provide a
"short and plain statement of the requested relief."  Rule 12(b)(6) allows a defendant to dismiss
that complaint if the plaintiff has failed to satisfy its Rule 8(a)(2) burden, *i.e.*, failed to state a
claim upon which relief can be granted.  *See Twombly*, 550 U.S. at 555-57 and *Iqbal,*129 S.Ct.
at 1949-51.  In *Twombly* and *Iqbal*, however, the Supreme Court never discussed applying the
"plausibility" standard in the 12(b)(2) context, whereby a court evaluates the question of
personal jurisdiction.  *See* Fed. R. Civ. P. 12(b)(2).  As used in the 12(b)(6) world, the
"plausibility" standard requires courts to assume the truth of the well-pled, *i.e.*, non-conclusory,
facts in the complaint, and determine whether those well-pled facts "plausibly" state a claim, *i.e.*,
present a factual scenario that "plausibly" violates the law.  *See id*.  Does the same analysis
apply in the 12(b)(2) world?  Because the Supreme Court never explicitly embraced that
proposition, this Court is wary of using it here.
    Moreover, assuming, *arguendo*, that the Court should employ *Twombly's* "plausibility"
standard in the 12(b)(2) world, its deployment in the above-cited *Dudnikov* excerpt is incorrect.
Before discussing why, the Court notes that the corollary for Rule 12(b)(2) is not Rule 8(a)(2)
but rather Rule 8(a)(1), which states that a pleading must contain "a short and plain statement
of the grounds for the court's jurisdiction . . . ."  Fed. R. Civ. P. 8(a)(1).  That suggests the
analysis of the two concepts are distinct (though the Court does note that in *Iqbal* the Supreme
Court at times spoke expansively in terms of Rule 8 generally.  See *Iqbal*, 129 S.Ct. at 1953).
But even assuming the "plausibility" standard applies in both the 12(b)(6) and 12(b)(2) world, the
*Dudnikov* court's use of the word "plausible" misapplies that term as it is used in *Twombly*.  Did
the panel mean to ask, for example, that, assuming the truth of Plaintiff's allegations, is it
"plausible" the Court has personal jurisdiction over the defendant?  If so, that application

alleged in Plaintiff's complaint and resolves factual disputes in the parties' affidavits in favor of Plaintiff. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citation omitted).

## B. **JURISDICTIONAL FACTS**

Plaintiff avers that Defendant maintains an office in Centennial, Colorado. Although the office is "nominally associated" with Waste Connections Inc., Defendant's parent company, Plaintiff contends that "as a practical matter" Defendant itself conducts business through its employees at the Colorado office, including Brian Karp, the "Central Region Engineer." (Doc. # 12-2, ¶¶ 2, 3.)

Plaintiff also contends (1) that Defendant administered the contract through its employees or agents at the Colorado office; (2) that Defendant regularly initiated communications with Plaintiff through e-mails and telephone calls originating from its Colorado office; and (3) that Defendant received numerous communications from Plaintiff in its Colorado office. In particular, Plaintiff cites a series of e-mails between

---

resembles the one endorsed by the Supreme Court. But if that were the panel's intent, then it would undermine the way the panel actually used the word "plausible." Again, the *Dudnikov* court defined the term "well-pled fact" to mean, at least in part, a fact that is "plausible." *Dudnikov*, 514 F.3d at 1070. This definition cuts against a basic premise in the 12(b)(6) world – that well-pled, *i.e.*, non-conclusory, are assumed true. Whether those facts are plausible is not the question. Rather, the question is, assuming their truth, do they "plausibly" state a claim?

For these reasons, the Court believes that the *Twombly/Iqbal* "plausibility" standard is limited to the Fed. R. Civ. P. 12(b)(6) setting and is inappropriate in a Fed. R. Civ. P. 12(b)(2) setting. Moreover, given that use of the "plausibility" standard would make no difference in this case and also given that the Tenth Circuit has only recited the word "plausible" without applying it in the Rule 12(b)(2) context, the Court does not feel bound by the Tenth Circuit's turn of phrase in *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008).

itself and Mr. Karp, dating from February 19, 2009 to June 3, 2009, in which they discuss the at-issue contract. (*Id.*, ¶¶ 3, 4, 7).

In addition, Plaintiff asserts the contract was "negotiated" in Colorado and that, afterward, Defendant directed Plaintiff to execute the contract and mail it to Defendant's Colorado office. Defendant's agents also met with Plaintiff's agents several times in Colorado. (*Id.*, ¶ 5; Doc. # 1-3, ¶¶ 4.d and 4.f.)

Plaintiff also avers that it submitted all of its fundamental contract paperwork to Defendant at its Colorado office, including payment applications, change orders, and similar documents. And in at least one of the contract documents issued by Defendant, Defendant identified itself using a Colorado address: "Waste Connections of Kansas, Inc., 6855 S. Havana St., Suite 300, Centennial, Colorado 80112." Finally, Defendant's performance obligations under the contract (to pay Plaintiff) were due in Colorado. (Doc. # 12-2, ¶¶ 7, 8.)

## II. DISCUSSION

### A. STANDARD OF REVIEW – RULE 12(b)(2) MOTION TO DISMISS

Plaintiff has the burden to establish the Court's personal jurisdiction over Defendant. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citation omitted). Given the procedural posture, that burden is light.

> Where a district court considers a pre-trial motion to dismiss for lack of
> personal jurisdiction without conducting an evidentiary hearing, the plaintiff
> need only make a prima facie showing of personal jurisdiction to defeat
> the motion. The plaintiff may make this prima facie showing by
> demonstrating, via affidavit or other written materials, facts that if true
> would support jurisdiction over the defendant.

*AST Sports Science, Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1056-57 (10th Cir.

2008) (citations and internal quotation marks omitted).

As mentioned, in resolving this motion the Court accepts as true all well-pled, *i.e.*,

non-conclusory and non-speculative, facts alleged in Plaintiff's complaint. *Dudnikov*,

514 F.3d at 1070. The parties have each submitted supporting affidavits. If the parties'

affidavits conflict, the conflicts "must be resolved in the plaintiff's favor, and the plaintiff's

prima facie showing is sufficient notwithstanding the contrary presentation by the

moving party." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995)(citation

omitted). If Plaintiff satisfies its prima facie burden, Defendant "must present a

compelling case demonstrating 'that the presence of some other considerations would

render jurisdiction unreasonable.'" *OMI Holdings v. Royal Ins. Co. of Canada,* 149 F.3d

1086, 1091 (quoting *Burger King Corp. v. Rudzewica*, 471 U.S. 462, 477 (1984)).

## B. ANALYSIS – WHETHER THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANT.

To obtain personal jurisdiction over a nonresident defendant in a diversity action,

a plaintiff must show (1) that jurisdiction is legitimate under the laws of the forum state,

and (2) that the exercise of jurisdiction does not offend the due process clause. *Soma*

*Medical Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999) (citation

omitted).

"'Colorado's long arm statute is coextensive with constitutional limitations

imposed by the due process clause. Therefore, if jurisdiction is consistent with the due

process clause, Colorado's long arm statute authorizes jurisdiction over a nonresident

defendant.'" *Grynberg v. Ivanhoe Energy, Inc.*, No. 08-cv-02528, --- F. Supp. 2d ----, 2009 WL 3217394, *6 (D. Colo. September 30, 2009) (quoting *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004)). Thus, the Court asks whether the exercise of personal jurisdiction over Defendant comports with due process.

This is a two-step inquiry. At step one, the Court examines "whether the non-resident defendant has 'minimum contacts' with the forum state such that he should reasonably anticipate being haled into court there." *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1065 (10th Cir. 2007) (quoting *TH Agriculture & Nutrition, LLC v. Ace European Group Ltd.*, 488 F.3d 1282, 1287 (10th Cir. 2007)). If the Court finds that Defendant has sufficient minimum contacts with Colorado, the Court will then ask "whether the court's exercise of jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice', that is, whether the exercise of jurisdiction is 'reasonable' under the circumstances." *Id.* (quoting *TH Agriculture & Nutrition, LLC*, 488 F.3d at 1287)).

The Court thus begins by asking whether Defendant has sufficient minimum contacts with Colorado. This inquiry turns on: (1) whether Defendant "purposefully directed" its activities at Colorado, and if so, (2) whether Plaintiff's injuries arose out of or resulted from those activities, *i.e.*, whether a sufficient "nexus" exists Defendant's forum-related contacts and Plaintiff's causes of action. *See TH Agriculture & Nutrition, LLC v. Ace European Group Ltd.*, 488 F.3d 1282, 1287, 1291 (10th Cir. 2007).[2]

---

[2] The Court's inquiry is limited to the question of specific personal jurisdiction. Although "a court may maintain general jurisdiction . . . based on the defendant's continuous and systematic general business contacts with the forum state[,]" *Trujillo v. Williams*, 465 F.3d

In contract cases, the first element in the "minimum contacts" inquiry is often

phrased as asking whether the defendant "purposefully availed" itself of the privilege of

conducting activities or consummating a transaction in the forum state. *Dudnikov v.*

*Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008). Defendant

here did contract with Plaintiff, a Colorado Limited Liability Company with its principal

place of business in Colorado Springs, Colorado. (Doc. # 1-3, ¶ 1.) However, as a

general rule, "[a]n individual's contract with an out-of-state party cannot, standing alone,

establish sufficient minimum contacts with the forum state." *See TH Agric. & Nutrition,*

*LLC*, 488 F.3d at 1287.

> To determine whether a nonresident defendant has purposefully
> established minimum contacts with the forum state by contracting with
> another party, a court must examine prior negotiations and contemplated
> future consequences, along with the terms of the contract and the parties'
> actual course of dealing. That is, the contract relied upon to establish
> minimum contacts must have a substantial connection with the forum
> state.

*Id.* (internal citations and quotation marks omitted) (emphasis added). The Court

considers each of these factors in turn.

### 1.    Prior Negotiations

First, as to prior negotiations, it appears the parties had none before the events

leading to the at-issue contract. (Doc. # 7 at 2.) The District Manager for Defendant

---

1210, 1218 n.7 (10th Cir. 2006), nothing in Plaintiff's complaint or Mr. Spinuzzi's affidavit
suggests that Defendant engaged in systematic and continuous activity in Colorado.
Accordingly, the Court concludes that general personal jurisdiction is lacking. *Also see*
*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1078-79 (10th Cir. 2008)
(discussing distinction between specific and general jurisdiction).

asserts in his affidavit that the invitation to bid was submitted from Kansas to four

contractors located in four different states.  (Doc. # 7-3, ¶ 8.)  Plaintiff, of course,

was one of these.  But there is no indication from Plaintiff that there was ever a prior

relationship between the parties.

In contrast, consider the Tenth Circuit's treatment of another contract case:

*Benton v. Cameco Corp.*, 375 F.3d 1070, 1077 (10th Cir. 2004).  The *Benton* court

found that the out-of-state defendant's contacts with Colorado were sufficient to

Colorado federal courts to assert comport with due process.[3]  The *Benton* court,

however, focused on a feature of the parties' business relationship that is absent from

this case.  In *Benton*, unlike here, the "prior negotiations and the contemplated future

consequences of the [contract] centered around the **continuing business relationship**

between [the defendant] and [the plaintiff]."  *Id.* (emphasis added).  The *Benton*

defendant had been conducting business with the *Benton* plaintiff for at least eight years

prior to negotiating the at-issue contract.  *Id.* at 1073, 1078.  And at all times the *Benton*

plaintiff had been located in Colorado.  *Id.* at 1078.

Here, as mentioned, the parties had no previous relationship before the

negotiations leading to the at-issue contract.  Accordingly, Defendant never established

a continuing business relationship whereby it enjoyed the privilege and benefits of doing

---

[3]  Even so, the *Benton* court noted that "[t]he facts of this case place it in the grey area
of personal jurisdiction analysis."  *Benton*, 375 F.3d at 1076-77.

business in Colorado.[4]  The concept of a "continuing business relationship" reflects a

rationale consistent with due process concerns.  That is, if, instead of a continuing

business relationship, personal jurisdiction were premised on "random, fortuitous, or

attenuated contacts," it would be unfair to hold a defendant to account in a foreign

jurisdiction.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *Keeton v.*

*Hustler Magazine, Inc.*, 465 U.S. 770, 773-74 (1984).   Here, given the lack of prior

negotiations between Plaintiff and Defendant, the Court finds this factor favors

Defendant.

      2.      Contemplated Future Consequences

As to contemplated future consequences, several facts suggest the appropriate

forum for this case is not Colorado, but rather Kansas.  First, the contract itself.  It states

that it is to be "governed by the law of the state in which the Project is located."  (Doc.

# 7-2 at 5.)  That state is Kansas, not Colorado.  Second, it is undisputed that Plaintiff

was hired to provide services in Kansas, not Colorado.  (Doc. # 7-3, ¶ 13; Doc. # 12

at 1.)  Therefore, the "focal point" of the performance obligations under the contract,

at least Plaintiff's, were in Kansas, not Colorado.  *See Far West Capital, Inc. v. Towne*,

46 F.3d 1071, 1080 (10th Cir. 1995).

---

    [4]  *See also, e.g., AST Sports Science, Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054,
1059-60 (10th Cir. 2008) (out-of-state defendants should not have been surprised to learn that
their continuing relationship with Colorado-based plaintiff – lasting over seven years – whereby
defendants served as plaintiff's European distributor, would subject them to sanctions in
Colorado for allegedly breaching their distributorship deal with plaintiff.).

3.      Terms of the Contract

As to the terms of the contract, the Court has already covered this factor to some extent.  Again, the contract itself states that disputes arising under it are to be resolved under Kansas law, not Colorado.  (Doc. # 7-2 at 5.)  In addition, the contract called for work to be done in Harper County, Kansas, not anywhere in Colorado.  (Doc. # 13-5 at 2; Doc. # 13-2.)  Plaintiff argues that the Defendant's payment obligations under the contract were due in Colorado.  (Doc. # 12, ¶ 8.)  The contract, however, does not specify Colorado as the location where payment is to be sent.  (See Doc. # 13-3, § 14.)  The Court finds that, at most, Plaintiff can claim that the contract required payment be made to Plaintiff and that Plaintiff happened to be located in Colorado.  This is too attenuated a contact.  Accordingly, this factor favors Defendant.

4.      The Parties' Actual Course of Dealing

And finally, as to the parties' actual course of dealing, again, several facts suggest to the Court it lacks personal jurisdiction over Defendant.

First, where was the contract "negotiated"?[5]  Plaintiff asserts in its complaint that the contract was "negotiated" in Colorado.  (Doc. # 1-3, ¶ 4d.)  Defendant denies this.  (Doc. # 7 at 3, 7-8.)  On the strength of its District Manager's affidavit, Defendant asserts the parties actual course of dealing was centered in Kansas, not Colorado.  (See Doc. # 7-3.)  More specifically, the pre-bid meeting, the pre-construction meeting,

---

[5]   "Negotiate" means "[t]o communicate with another party for the purpose of reaching an understanding <they negotiated with their counterparts for weeks on end>. 2. To bring about by discussion or bargaining . . . ."  Black's Law Dictionary (8th ed. 2004).

periodic construction progress meetings and work all took place in Kansas.  (*Id.*, ¶¶ 9, 14.)  Defendant also asserts that the invitation to bid was prepared and submitted from Kansas.  (*Id.*, ¶ 8.)

Plaintiff disputes Defendant's claims by pointing out that the invitation to bid identifies Defendant's address at a locale in Centennial, Colorado.  (*See* Doc. # 12 at 5; Doc # 13 at 12; Doc # 15-2 at 12.)  In support, Plaintiff submitted an affidavit of one of its former employees, Frank Spinuzzi.  (*See* Doc. # 12-2.)  Although the Court must resolve factual disputes in opposing affidavits in favor of Plaintiff,[6] Mr. Spinuzzi's affidavit makes no reference to the contract being "negotiated" in Colorado.  Thus, the only documentary evidence in support of the notion that contract was "negotiated" in Colorado is a one-sentence assertion in Plaintiff's complaint.  (Doc. # 1-3, ¶ 4d.)  Given the contrary evidence submitted by Defendant, in the form of its District Manager's affidavit, and given also that Plaintiff does not revisit that assertion in its own supporting affidavit, the Court disregards Plaintiff's assertion that the contract was "negotiated" in Colorado.

Nevertheless, Mr. Spinuzzi does make several assertions in his affidavit that benefit Plaintiff.  He asserts, for instance, that the contract was "administered" by Defendant's employees, specifically, by Mr. Brian Karp, in Colorado.  As evidence,

---

[6] *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000) ("If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor. . . .  However, only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true.")

Plaintiff submitted to the Court copies of e-mails exchanged between Plaintiff's

employees and Mr. Brian Karp, an employee of Defendant's parent company – Waste

Connections, Inc.  These e-mails, written between February 19, 2009 and June 3, 2009,

reflect an on-going discussion between Mr. Karp and employees of Plaintiff regarding

various issues that arose during Plaintiff's performance at the work site.  (*See* Doc. #

12-2 at 6-40.)  Defendant asserts these e-mails are insignificant because Mr. Karp

works for Defendant's parent company, not Defendant.  This fact is supported by Mr.

Karp's declaration.  (Doc. # 13-4, ¶¶ 2, 3.)  Thus, Defendant argues, Mr. Karp's

communications with Plaintiff are inapposite to the question of Defendant's contacts.

It is clear that the bulk of Plaintiff's alleged contacts with Defendant are actually

with Mr. Karp, an employee of Defendant's parent company, which has a regional office

in Colorado.  Plaintiff's argument in this regard is that the contacts of the "principal," *i.e.*,

the parent company, should be imputed to the "agent," *i.e.*, Defendant, for purposes of

determining Defendant's "contacts" with Colorado.

Plaintiff's attempt to impute the contacts of Defendant's parent to Defendant

underscores the lack of direct contacts between Defendant itself and Colorado.  Under

normal conditions, the Court would be limited to considering whether Plaintiff's claim

"arises out of or results from 'actions by the defendant [*itself*] that create a substantial

connection with the forum state.'"  *Fairbrother v. American Monument Foundation, LLC,*

340 F. Supp. 2d 1147, 1152-53 (D. Colo. 2004)(citing *Asahi Metal Industry Co. v.*

*Superior Court of California*, 480 U.S. 102, 109 (1987) (emphasis in original)).

Because personal jurisdiction requires a purposeful act by the defendant "itself,"

personal jurisdiction is not associational or derivative in nature.[7]  However, under

Colorado's agency law, the "contacts" of an agent can be imputed to the principal for

purposes of personal jurisdiction.  *Goettman v. North Fork Valley Restaurant*, 176 P.3d

60, 67 (Colo. 2007)[8].

But even assuming, *arguendo*, that Defendant's parent has sufficient contacts

with Colorado such that the parent could be held accountable for its alleged acts in

Colorado, that still does not raise the reasonable inference[9] that Defendant itself could

be held to account in Colorado for Defendant's alleged acts.  This is because the

traditional rationale for imputing contacts, *i.e.*, that a principal is responsible for the acts

---

[7]  *See Asahi Metal Industry Co., Ltd.*, 480 U.S. at 109 ("minimum contacts must have a basis in some act by which the *defendant* purposefully avails *itself* of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. Jurisdiction is proper . . .  where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State.") (internal citations and quotation marks omitted; emphasis added).

[8]  *Also see SGI Air Holdings II LLC v. Novartis Int'l AG*, 239 F. Supp. 2d 1161, 1169 (D.Colo. 2003) (finding agency relationship sufficient to support personal jurisdiction over non-resident parent, but only where resident subsidiary's business mirrored a "core business" of parent) *and Quarles v. Fuqua Indus., Inc.*, 504 F.2d 1358, 1364 (10th Cir.1974) (finding no jurisdictional predicate where subsidiary, an operator of adult vocational training schools, did not engage in parent holding company's "business of diversified corporate investments").

[9]  "Reasonable inference" refers to Plaintiff's prima facie burden.  Plaintiff must make a prima facie demonstration of the facts on which personal jurisdiction is predicated.  It can do this by demonstrating facts that, if true, raise "a reasonable inference that the court has jurisdiction over the defendant." *Goettman v. North Fork Valley Restaurant*, 176 P.3d 60, 66 (Colo. 2007); *see also Bracewell v. Nicholson Air Services, Inc.*, 680 F.2d 103, 104 (11th Cir. 1982)(motion to dismiss should be denied if "reasonable inference" exists based on complaint that defendant can be subjected to jurisdiction).

of its agent, is absent here.  *Goettman v. North Fork Valley Restaurant*, 176 P.3d 60, 67 (Colo. 2007).

Plaintiff cites to *Goettman* in support of its agency theory of jurisdiction but that case is inapposite.  *See id.*  In *Goettman*, the Colorado Supreme Court found that an agent-employee's contacts with Colorado – involving a fatal car accident in which he was the driver – could be imputed to his out-of-state principal-employer, thus holding the principal-employer to account for the agent-employee's alleged offenses in Colorado.  *See id.*

Plaintiff seeks to do the opposite.  To do that, it must first persuade the Court to reasonably infer that Defendant is in fact the agent of its parent company.  Plaintiff has not shown that.  But even if it had, that would not be enough.  Plaintiff seeks – in a move opposite to that done by the *Goettman* plaintiff – to impute the contacts of the principal to its agent, in particular, the "contacts" of Mr. Karp, an employee for the principal, to Defendant.  It has made no showing in this regard.  Thus, the "course of dealing" factor, largely predicated on the representations of Mr. Karp, do not help Plaintiff.

Because Plaintiff has failed to show that Defendant purposefully availed itself of the privileges of conducting activities or consummating a transaction in Colorado, the Court will not consider the second inquiry in the "minimum contacts" test, whether a sufficient "nexus" exists between Defendant's forum-related contacts and Plaintiff's claim.

In summary, then, Plaintiff has failed to raise a reasonable inference that

Defendant's contacts with Colorado are sufficient for the Court to exercise jurisdiction

over Defendant without offending due process.  Given that conclusion, the Court need

not address the question whether, despite those contacts, exercising jurisdiction over

Defendant would be reasonable.  *See Burger King*, 471 U.S. at 476.  However, before

granting Defendant's motion to dismiss, the Court considers whether it should instead

transfer the case to the United States District Court for the District of Kansas.

## C.      ANALYSIS – WHETHER TRANSFER IS APPROPRIATE.

Several statutory provisions allow this Court to transfer cases.[10]  The Court first

considers 28 U.S.C. § 1404(a), which states that, "[f]or the convenience of parties and

witnesses, in the interest of justice, a district court may transfer any civil action to any

other district or division where it might have been brought."[11]  Section 1404(a) implies,

however, that the Court has personal jurisdiction over Defendant.  As shown above, that

is not the case here.  The Court instead focuses on 28 U.S.C. § 1631, which provides:

> Whenever a civil action is filed in a court . . . and that court finds that there
> is a want of jurisdiction, the court shall, if it is in the interest of justice,

---

[10]    In addition to 28 U.S.C. § 1404(a) and 28 U.S.C. § 1631, see 28 U.S.C. § 1406(a), which states that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

[11]    The Court can do this *sua sponte.*  Section 1404(a) does not limit the Court's action to acting upon a party's motion.  In contrast, consider section 1404(b), which allows a court to transfer a case from one division to another within district, but only  "[u]pon motion, consent or stipulation of all parties . . . ."  28 U.S.C. § 1404(b).  *Also see Trujillo v. Williams*, 465 F.3d 1210, 1222 (10th Cir. 2006) ("A court may *sua sponte* cure jurisdictional and venue defects by transferring a suit under the federal transfer statutes . . . when it is in the interests of justice.").

15

transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

Section 1631 applies in cases where either subject matter jurisdiction or personal jurisdiction is lacking. *Trujillo v. Williams*, 465 F.3d 1210, 1222 n.15 (10th Cir. 2006). Moreover, the Court has "considerable discretion in deciding whether a § 1631 transfer would be appropriate." *United States v. Botefuhr*, 309 F.3d 1263, 1274 n. 8 (10th Cir. 2002) (citation omitted). Because the Court finds it lacks personal jurisdiction over Defendant, it will not consider the case further. Instead of dismissing the case, though, the Court prefers transferring it to an appropriate forum. The parties do not dispute that the District of Kansas would have jurisdiction over both the case and these parties. (*See* Doc. ## 21 and 22.) Accordingly, pursuant to 28 U.S.C. § 1631, the Court finds that there is a "want of jurisdiction" in the District of Colorado and that this case could have been brought in the District of Kansas at the time it was filed here. In the interests of justice, then, the Court will exercise its "considerable discretion" and transfer the case to the United States District Court for the District of Kansas. *Botefuhr*, 309 F.3d at 1274 n. 8.

## III. CONCLUSION

Accordingly,

1.      The Court ORDERS that this case be transferred to the United States District Court for the District of Kansas.

2.      In light of that decision, Defendant's Motion to Dismiss for Lack of Personal

Jurisdiction (Doc. # 7) is DENIED AS MOOT.

DATED:  March __02__, 2010

                                        BY THE COURT:

                                        _____
                                        CHRISTINE M. ARGUELLO
                                        United States District Judge